TERRY, APPELLEE, *v*. SPERRY ET AL., APPELLANTS.

[Cite as *Terry v. Sperry,* 130 Ohio St.3d 125, 2011-Ohio-3364.]

*Township zoning—R.C. 519.21(A)—Exemption for viticulture.*

(No. 2010-0810—Submitted April 20, 2011—Decided July 12, 2011.)

APPEAL from the Court of Appeals for Mahoning County, No. 08-MA-227,

186 Ohio App.3d 798, 2010-Ohio-1299.

_____

## SYLLABUS OF THE COURT

The exemption from township zoning in R.C. 519.21(A) does not require for its application that viticulture be the primary use of property engaged in the vinting and selling of wine.

_____

LANZINGER, J.

{¶ 1}   In this case, we are asked to interpret R.C. 519.21(A) to determine when a winery may be exempt from township zoning regulations.

### Case Background

{¶ 2}   Appellant Gayle Sperry owns property and resides in Milton Township at 3020 Sylvandale, Berlin Center, a.k.a. 3020 Scenic Drive.[1]  She and her son and daughter-in-law, appellants Kristofer and Evelyn Sperry, operate Myrddin Wine Company, L.L.C., d.b.a. Myrddin Winery, at this location.

{¶ 3}   The property is in an R1 residentially zoned district.  According to the Milton Township Zoning Resolution, Section 5 B, R-1, Residential District, and Section 4, Definitions, the following uses are permitted: agriculture, single-family dwellings, churches and other places of worship, schools, *home*

_____

1.  Appellants contend that the property is approximately two acres, but appellee states that it is only 0.75 acres.

*occupations* as defined in Section 4, automobile parking spaces, and accessory buildings. "Home occupation" is defined as an occupation conducted in a dwelling unit or small garage that meets the following criteria:

**{¶ 4}** "a. No person other than members of the family residing on the premises shall be engaged in such occupation conducted entirely in the dwelling unit, or garages containing 600 square feet or less.

**{¶ 5}** "b. The use of the dwelling unit of the home occupation shall be clearly incidental and subordinate to its use for residential purposes by its occupants, and not more than 25% of the total floor area of the dwelling unit shall be used in the conduct of the home occupation;

**{¶ 6}** "c. There shall be no change in the outside appearance of the building or premises or other visible evidence of conduct of such home occupation other than one sign as permitted in Section 8C of this Ordinance;

**{¶ 7}** "d. Sufficient offstreet parking shall be provided based on the type of home occupation and such occupation shall not create traffic, parking, sewerage, or water use in excess of what is normal in a residential neighborhood.

**{¶ 8}** "e. No equipment or process shall be used in such occupations which creates noise, vibration, glare, fumes, odors, or electrical interference detectable to the normal senses off the lot, if the occupation is conducted in a single family residence, or outside the dwelling unit if conducted in other than a single family residence."

**{¶ 9}** Before starting the winery, Kristofer Sperry contacted the Milton Township zoning inspector and inquired whether a winery could be located on his mother's property. He was told that the business was allowed and that a written

approval or permit did not need to be issued.[2] The Sperrys then procured federal and state permits to operate a winery on their property.

{¶ 10} The property itself contains 20 grape vines, of which 12 were harvested. The Sperrys also obtained grapes and grape juice from outside sources. The grapes were destemmed, crushed, and fermented, and the wine was bottled, aged, labeled, and sold, on the premises. Shelf-stable foods were also sold. Five percent of the sales of bottled wine sold at the winery were from grapes planted, cultivated, and harvested on the property.

{¶ 11} In January 2008, based on neighbor's calls, Jenifer Terry, zoning inspector for Milton Township, filed a complaint for preliminary and permanent injunction seeking to enjoin the Sperrys' use of the property as a retail business and restaurant in a residentially zoned district, R-1. After stipulations of fact were filed with the common pleas court, the parties filed motions for summary judgment. They agreed that the issues before the court were the following:

{¶ 12} "1. Are the winery activities conducted on the property an Agricultural Use of the Property as defined in Section 519.01 of the Ohio Revised Code?

{¶ 13} "2. Is the Myrddin Winery exempt from zoning regulation by Milton Township pursuant to Section [519.21(A)] of the Ohio Revised Code?"

{¶ 14} The trial court answered both questions negatively and granted summary judgment to the zoning inspector. The court also entered an order permanently restraining the Sperrys from operating a winery on their property. The Sperrys then filed a notice of appeal to the Seventh District Court of Appeals.

{¶ 15} The appellate court affirmed the judgment, agreeing with the trial court that the primary use of the property was not viticulture (the growing of

---

2. According to appellee, a zoning permit is issued only to construct a building. A request to engage in a home occupation did not require an application, nor would the zoning inspector issue any written approval or permits when allowing home occupations.

grapes), but rather the vinting (the making) of and selling of wine. The court of appeals concluded that both R.C. 519.01 and R.C. 519.21(A) required that viticulture be the primary use of the property in order to qualify for the agriculture exemption from township zoning.

{¶ 16} We accepted the Sperrys' discretionary appeal. The Sperrys contend that under R.C. 519.21(A), their winery is exempt from township zoning regulations because they also engage in viticulture on the property within the meaning of the statute.

{¶ 17} We agree with appellants that the exemption from township zoning in R.C. 519.21(A) does not require for its application that viticulture be the primary use of property engaged in the vinting and selling of wine, and therefore we reverse the judgment of the court of appeals.

**Law and Analysis**

*Township Zoning Power*

{¶ 18} Ohio townships have no inherent or constitutionally granted police or zoning power. *Yorkavitz v. Bd. of Columbia Twp. Trustees* (1957), 166 Ohio St. 349, 351, 2 O.O.2d 255, 142 N.E.2d 655. "Accordingly, the zoning authority possessed by townships in the state of Ohio is limited to that which is specifically conferred by the General Assembly." *Bd. of Bainbridge Twp. Trustees v. Funtime, Inc.* (1990), 55 Ohio St.3d 106, 108, 563 N.E.2d 717.

{¶ 19} In addition, "[a]ll zoning decisions, whether on an administrative or judicial level, should be based on the following elementary principles which underlie real property law. Zoning resolutions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled. Therefore, such resolutions are ordinarily construed in favor of the property owner. Restrictions on the use of real property by ordinance, resolution or statute must be strictly construed, and the scope of the restrictions cannot be extended to include limitations not clearly prescribed."

(Citations omitted.)  *Saunders v. Clark Cty. Zoning Dept.* (1981), 66 Ohio St.2d 259, 261, 20 O.O.3d 244, 421 N.E.2d 152.  Furthermore, exemptions from restrictive zoning provisions are to be liberally construed.  *State ex rel. Moore Oil Co. v. Dauben* (1919), 99 Ohio St. 406, 124 N.E. 232, paragraph one of the syllabus.

*The Zoning Exemption of R.C. 519.21(A)*

{¶ 20} R.C. 519.02 authorizes township trustees, in the interest of the public health and safety, to adopt resolutions limiting the size and location of buildings and other structures and the uses of land for trade, industry, residence, recreation, or other purposes.  That power, however, is limited by R.C. 519.21.[3]

---

3.  {¶ a}  R.C. 519.21 provides:

{¶ b} "(A) Except as otherwise provided in division (B) of this section, sections 519.02 to 519.25 of the Revised Code confer no power on any township zoning commission, board of township trustees, or board of zoning appeals to prohibit the use of any land for agricultural purposes or the construction or use of buildings or structures incident to the use for agricultural purposes of the land on which such buildings or structures are located, including buildings or structures that are used primarily for vinting and selling wine and that are located on land any part of which is used for viticulture, and no zoning certificate shall be required for any such building or structure.

{¶ c} "(B) A township zoning resolution, or an amendment to such resolution, may in any platted subdivision approved under section 711.05, 711.09, or 711.10 of the Revised Code, or in any area consisting of fifteen or more lots approved under section 711.131 of the Revised Code that are contiguous to one another, or some of which are contiguous to one another and adjacent to one side of a dedicated public road, and the balance of which are contiguous to one another and adjacent to the opposite side of the same dedicated public road regulate:

{¶ d} "(1) Agriculture on lots of one acre or less;

{¶ e} "(2) Buildings or structures incident to the use of land for agricultural purposes on lots greater than one acre but not greater than five acres by: set back building lines; height; and size;

{¶ f} "(3) Dairying and animal and poultry husbandry on lots greater than one acre but not greater than five acres when at least thirty-five per cent of the lots in the subdivision are developed with at least one building, structure, or improvement that is subject to real property taxation or that is subject to the tax on manufactured and mobile homes under section 4503.06 of the Revised Code. After thirty-five per cent of the lots are so developed, dairying and animal and poultry husbandry shall be considered nonconforming use of land and buildings or structures pursuant to section 519.19 of the Revised Code.

{¶ g} "Division (B) of this section confers no power on any township zoning commission, board of township trustees, or board of zoning appeals to regulate agriculture, buildings or structures, and dairying and animal and poultry husbandry on lots greater than five acres.

{¶ h} "(C) Such sections confer no power on any township zoning commission, board of township trustees, or board of zoning appeals to prohibit in a district zoned for agricultural,

That statute is divided into three subsections and, in general, prevents townships from prohibiting the use of land for agricultural purposes (R.C. 519.21(A)), limits a township's ability to regulate agriculture in platted subdivisions (R.C. 519.21(B)), and limits the regulation of farm markets (R.C. 519.21(C)). This case does not involve a farm market, and although the Sperry property is located in a platted subdivision, Milton Township has not adopted any zoning regulations that it would be permitted to adopt by R.C. 519.21(B). Thus, the section at issue here is R.C. 519.21(A).

{¶ 21} R.C. 519.21(A) provides that "sections 519.02 to 519.25 of the Revised Code confer no power on any township zoning commission, board of township trustees, or board of zoning appeals to prohibit the use of any land for agricultural purposes or the construction or use of buildings or structures incident to the use for agricultural purposes of the land on which such buildings or structures are located, *including buildings or structures that are used primarily for vinting and selling wine and that are located on land any part of which is used for viticulture*, and no zoning certificate shall be required for any such building or structure." (Emphasis added.) In other words, R.C. 519.21(A) provides two circumstances under which the use of a property is exempt from township zoning regulations: (1) the property is used for agricultural purposes or (2) the construction or use of buildings or structures on the property is incident to an agricultural use of the land.

---

industrial, residential, or commercial uses, the use of any land for a farm market where fifty per cent or more of the gross income received from the market is derived from produce raised on farms owned or operated by the market operator in a normal crop year. However, a board of township trustees, as provided in section 519.02 of the Revised Code, may regulate such factors pertaining to farm markets as size of the structure, size of parking areas that may be required, set back building lines, and egress or ingress, where such regulation is necessary to protect the public health and safety."

*The Meaning of "Agriculture"*

{¶ 22} R.C. 519.21(A) begins by saying that township zoning boards may not prohibit the use of land for agricultural purposes. The zoning inspector argues that the Sperrys' activities on their property do not constitute an agricultural use. To determine whether the property is exempt from township zoning, however, we must examine the statutory meaning of "agriculture." For purposes of the township zoning statutes, R.C. 519.01 defines "agriculture" generally as "farming; ranching; aquaculture; apiculture; horticulture; *viticulture*; animal husbandry, including, but not limited to, the care and raising of livestock, equine, and fur-bearing animals; poultry husbandry and the production of poultry and poultry products; dairy production; the production of field crops, tobacco, fruits, vegetables, nursery stock, ornamental shrubs, ornamental trees, flowers, sod, or mushrooms; timber; pasturage; any combination of the foregoing; the processing, drying, storage, and marketing of agricultural products when those activities are conducted in conjunction with, but are secondary to, such husbandry or production." (Emphasis added.)

{¶ 23} Viticulture is "the cultivation or culture of grapes esp. for wine making." Merriam-Webster Collegiate Dictionary (11th Ed.2003) 1399. According to Webster's Third New International Dictionary (2002) 2553, "vint" means "to make (wine) from fruit." When we consider the statutory definition of "agriculture," the Sperry property may potentially be seen to have a use for agriculture either in viticulture (the growing of grapes) or in the processing and marketing of agricultural products (the vinting and selling of wine). The statute does not establish a minimum number of vines needed for cultivation to constitute viticulture; the growing and harvesting of grapes on the Sperry property thus satisfies the term "viticulture." To qualify as "agriculture" under R.C. 519.01's definition, the Sperrys' vinting and selling activity must be secondary to the production of agricultural products (i.e., the grapes). In this case, however, only

five percent of the winery's sales are derived from grapes produced on the property. Because the vinting and selling of wine on the Sperry property are not secondary to the viticulture activities, the winery operation does not fall within the general definition of "agriculture."

*Use of Buildings or Structures Incident to the Use for Agricultural Purposes*

{¶ 24} Even though the winery itself does not constitute an agricultural use by the general definition of "agriculture," there is a second circumstance under which the use of the building for vinting and selling wine may be exempt from township zoning. The exemption in R.C. 519.21(A) specifically provides that the township has no power to prohibit the "use of buildings or structures incident to the use for agricultural purposes of the land on which such buildings or structures are located, *including buildings or structures that are used primarily for vinting and selling wine and that are located on land any part of which is used for viticulture.*" (Emphasis added.)

{¶ 25} The court of appeals focused on the meaning of the phrase "incident to" and determined that the General Assembly intended that the agricultural purpose must be the primary use of the property. The court, however, appeared to give no import to the phrase "including buildings or structures that are used primarily for vinting and selling wine and that are located on land any part of which is used for viticulture." When we engage in statutory interpretation, our first duty is to determine whether the statute is clear and unambiguous. *Sherwin-Williams Co. v. Dayton Freight Lines, Inc.*, 112 Ohio St.3d 52, 2006-Ohio-6498, 858 N.E.2d 324, ¶ 15. " '[W]here the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions therefrom.' " Id. at ¶ 14, quoting *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 14.

**{¶ 26}** We conclude that the language is clear and unambiguous. If there is agricultural use of the property (viticulture), the township may not regulate the zoning of buildings that are used primarily for vinting and selling wine. The General Assembly included a specific example of what constitutes the "use of buildings or structures incident to the use for agricultural purposes of the land on which such buildings or structures are located" when it followed that phrase with "buildings or structures that are used primarily for vinting and selling wine and that are located on land any part of which is used for viticulture." Therefore, under R.C. 519.21(A), a township may not prohibit the use of buildings for the vinting and selling of wine on a property as long as the property also cultivates grapes for wine making.

**{¶ 27}** Contrary to the court of appeals' determination, there is no requirement in R.C. 519.21(A) that the vinting and selling of wine be a secondary or subordinate use of the property or that viticulture be the primary use of the property. A township may not prohibit the use of a property for vinting and selling wine if any part of the property is used for viticulture. As appellee's counsel acknowledged in oral arguments, "any" can mean one vine. Appellee nonetheless argues that we should apply a commonsense approach and require a more substantial viticulture operation. However, that would be contrary to the plain language of the statute. Had the General Assembly intended that viticulture must be the primary use of the property to qualify under R.C. 519.21(A) for exemption from township zoning, it could have easily expressed that requirement, as it did in the definition of "agriculture" in R.C. 519.01 or as it did in R.C. 519.21(C), requiring that a farm market receive 50 percent or more of its gross income from produce raised on farms owned or operated by the market operator before being exempt from regulation.

**{¶ 28}** We therefore hold that pursuant to R.C. 519.21(A), a township has no zoning authority over the use of buildings or structures for the vinting and selling of wine on property that is also used for viticulture.

### Conclusion

**{¶ 29}** Because Myrddin Winery conducts an exempt use of the property pursuant to R.C. 519.21(A), the zoning regulations by Milton Township do not apply. We reverse the judgment of the Seventh District Court of Appeals and remand to the trial court for further proceedings.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, CUPP, and MCGEE BROWN, JJ., concur.

LUNDBERG STRATTON, J., concurs in judgment only.

_____

Mark S. Finamore and Veronica Buetel, for appellee.

Wright Law Co., L.P.A., and David S. Pennington, for appellants.

_____